**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

REBEKKA LIEN and JAKE SEEVERS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TALKDESK, INC.,

Defendant.

Case No. 3:24-cv-06467-VC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Hearing Date: January 23, 2024
Time: 10:00 a.m.
Courtroom: 4 – 17th Floor
Judge: Hon. Vince Chhabria

## TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. PLAINTIFFS HAVE SUFFERED AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING ..... 2

A. Defendant Deprived Plaintiffs Of The Right To Control The Firsthand Dissemination Of Their Personal Information ..... 2

B. Defendant's Purported Use Of The Communications Is Irrelevant ..... 5

II. PLAINTIFFS ALLEGE A VIOLATION OF CIPA § 631 ..... 7

A. Defendant Was A Third-Party Wiretapper To Plaintiffs' Communications With Patagonia And Zumiez ..... 7

1. Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt ..... 7

2. Defendant Is A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject ..... 10

B. Defendant Intercepted Plaintiffs' Communications In Transit ..... 12

C. Defendant Intentionally Wiretapped Plaintiffs' Communications ..... 13

D. Defendant Used The Wiretapped Communications ..... 15

CONCLUSION ..... 15

## TABLE OF AUTHORITIES


PAGE(S)

**CASES**

*Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ... 7

*Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ... 8, 11

*Balletto v. Am. Honda Motor Co.*, 2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ... 9, 13

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 4, 5

*Cody v. Ring LLC*, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ... 8

*D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ... 11

*Doe I v. Google LLC*, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ... 15

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ... 14

*Flowers v. Twilio, Inc.*, 2016 WL 11684603 (Cal. Super. Ct. Alameda Cnty. Aug. 2, 2016) ... 7

*Garcia v. Build.com, Inc.*, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ... 4

*Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) ... 8, 13

*Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490 (W.D. Wash. July 2, 2024) ... passim

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ... 10

*Heerde v. Learfield Communications, LLC*, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ... 4

*Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055 (C.D. Cal. July 31, 2024) ... 13

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)........................................ 5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................ 3, 4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)........................................ 3

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024)........................................ 14, 15

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)........................................ 4, 5

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)........................................ 8, 11, 12

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023)........................................ 2, 6

*Love v. Ladder Financial, Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024)........................................ 11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................ 4

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)........................................ 13

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024)........................................ 5

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017)........................................ 3

*Raw Story Media, Inc. v. OpenAI, Inc.*,
2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024)........................................ 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........................................ 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)........................................ passim

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Cal. Super. Ct. July 9, 2024)........................................ 7

*Roney v. Miller*,
705 F. App’x 670 (9th Cir. 2017)........................................ 16

*Ruffino v. United States*,
374 F. Supp. 3d 961 (E.D. Cal. 2019) ........................................ 6

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) ........................................ 3

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................ 7, 11, 12

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........................................ 5

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ........................................ 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................ 3, 4

*Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*,
594 F.2d 730 (9th Cir. 1979) ........................................ 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................ 3

*Turner v. Nuance Communications, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ........................................ passim

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ........................................ 2, 3, 4, 5

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........................................ 7, 9, 11, 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........................................ 8, 11

*Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) ........................................ 10

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................ 8, 11

*Yockey v. Salesforce, Inc.*,
2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ........................................ 9, 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................ 7, 9

**STATUTES**

Cal. Penal Code § 630 .................................................................................................................. 1

## INTRODUCTION

When the California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"), it recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Further, as the California Supreme Court has recognized, the intent of the CIPA is to protect the right of Californians to control who does and does not get to learn the content of their communications:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.
>
> …
>
> [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (cleaned up). To wit, when consumers communicate with a business's customer service representatives, they expect to only communicate with the company through its employees. Consumers *do not* expect their communications with customer service representatives provider to be secretly listened to, sent to, and accessed by completely separate third party and multi-billion dollar technology company (Compl. ¶ 10)—the "unseen auditor."

But that is exactly what happened here. When Plaintiffs called Patagonia and Zumiez, their communications were listened to, learned, and recorded by a *completely separate company*: Defendant. *See* Compl. ¶¶ 55-74. Defendant, as a completely separate company from Patagonia and Zumiez, had no business learning the contents of Plaintiffs' conversation, much less having the capability to analyze that conversation and use it to improve Defendant's products and services. *See id.* ¶¶ 26, 28-33, 39, 47-51. And these recordings are not anonymous, as Defendant collects identifying information from consumers on these calls like their names, e-mail address, and phone numbers. *Id.* ¶ 47. Yet, this is the exact result intended by Defendant, who proudly touts its

partnership with Patagonia and Zumiez as customer successful stories. *Id.* ¶¶ 22-23. Accordingly, Defendant was an "unseen auditor" to Plaintiffs' communications with Patagonia and Zumiez, thereby depriving Plaintiffs of their "right to control the nature and extent of the firsthand dissemination of his statements." *Ribas*, 38 Cal. 3d at 361. This is an injury long recognized at "both the common law and the literal understandings of privacy." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

Two courts have rejected motions to dismiss CIPA § 631 claims brought by Defendant's competitors in this space. *See Turner v. Nuance Communications, Inc.*, --- F. Supp. 3d ---, 2024 WL 2750017 (N.D. Cal. May 28, 2024); *Gladstone v. Amazon Web Servs., Inc.*, --- F. Supp. 3d ---, 2024 WL 3276490 (W.D. Wash. July 2, 2024). This Court should do the same.

## ARGUMENT

### I. PLAINTIFFS HAVE SUFFERED AN INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING

#### A. Defendant Deprived Plaintiffs Of The Right To Control The Firsthand Dissemination Of Their Personal Information

Defendant contends that "Plaintiffs have [] not alleged any concrete harm that bears a close relationship to a substantive right of privacy," and thus lack Article III standing. MTD at 7. On the contrary, as the Ninth Circuit has held, "the relevant law is settled. A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) (cleaned up).

Specifically, CIPA was enacted to protect Californians' "right to control the nature and extent of the firsthand dissemination of [their] statements," which is violated when a conversation is "simultaneous[ly] disseminat[ed] to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). As the Supreme Court has held, this privacy right has long been protected. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). Thus, as the Ninth Circuit has held, when a statute like CIPA that codifies a person's substantive right to privacy—specifically, "the individual's control of information concerning his or

her person"—is violated, that violation is sufficient to give rise to Article III standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*") (cleaned up). Even before *In re Facebook*, this Court echoed that conclusion. *Revitch v. New Moosejaw, LLC*, 2019 WL5485330, at *1 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ("Being eavesdropped upon is a concrete (though intangible) harm ….").

Indeed, every circuit court to examine the question has held the surveillance of a consumer's communications by a third party service provider is sufficient to give rise to Article III standing. *Salazar v. National Basketball Association*, 118 F.4th 533, 537 (2d Cir. 2024) (standing alleged where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel," which "is closely related to the public disclosure of private facts analog") (cleaned up); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34–35 (2d Cir. 2017) ("PulsePoint's alleged unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness."); *In re Google Inc. Cookie Placement Consumer Privacy Litig*. ("*In re Google*"), 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when … any [] third party, tracks a person's internet browser activity without authorization.").

Although some of these cases were decided before *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), they remain good law because each "postdates [*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)], the precedent on which *TransUnion* largely relied." *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023). "*TransUnion*['s] h[olding] that Article III standing requires a concrete injury even in the context of a statutory violation … was not new; it was a reiteration (and a direct quote) of the Supreme Court's holding in [*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)]." *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023). Given this, courts have rejected the argument that post-*Spokeo* but pre-*TransUnion* authorities are no longer good law, or need to be reconsidered. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021) ("Though [*In re Facebook* and *Eichenberger*] were decided before *TransUnion*, they are not overruled by *TransUnion*. *TransUnion* involved a claim akin to defamation, not invasion of

privacy."); *Build.com*, 2023 WL 4535531, at *3 ("Recently, some courts have held that the reasoning in [earlier] cases was undermined by [*TransUnion*]. … This Court concludes that *TransUnion* does not undermine the reasoning in those cases.").

Here, Plaintiffs allege Defendant intercepted their communications with Patagonia and Zumiez concerning their shopping preferences, as well as their personal information like names and phone numbers that allows for their identification, without their prior consent. Compl. ¶¶ 47, 55, 59, 65, 69. By doing so, Defendant violated Plaintiffs' right to "control the nature and extent of the firsthand dissemination of [their] statements," and thus, violated both Plaintiffs' right to privacy and CIPA § 631. *Ribas*, 38 Cal. 3d at 360; *Reporters Comm. for Freedom of the Press*, 489 U.S. at 763. Indeed, Courts have held that consumers "have a reasonable expectation of privacy in 'unique search terms,'" which are analogous to the shopping preferences Defendant intercepted here. *See Heerde v. Learfield Communications, LLC*, --- F. Supp. 3d ---, 2024 WL 3573874, at *5 (C.D. Cal. July 19, 2024); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."); *In re Facebook*, 956 F.3d at 599 ("Facebook's user profiles would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives."). Accordingly, Defendant's violation of CIPA § 631 caused Plaintiffs a concrete, immediate injury sufficient for Article III standing.

Defendant protests that it has not intercepted "private or sensitive information about Plaintiffs." MTD at 6. That is not a requirement for Article III standing. *James*, 701 F. Supp. 3d at 949 ("[T]he Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing."). Again, the privacy harm being violated here is the right to control one's "personal information," which encompasses one's shopping preferences, full names, phone numbers, and the like. *Id.* at 951-52 (disagreeing with the argument that "non-anonymized information on, *e.g.*, websites visited or search terms used is not sufficiently

personal"); *see also id.* at 949 (finding personal information encompasses "specific web pages viewed, search terms entered, and purchase behavior"); *Brown*, 685 F. Supp. 3d at 941.

Defendant also believes that phone numbers cannot constitute "private" information. MTD at 8. But it is common sense that consumers do not broadcast their phone numbers to the world, lest they be bombarded with spam calls or unwanted text messages. Defendant's surreptitious acquisition of that information is sufficient to give rise to Article III standing because it deprives Plaintiffs of the right to control who does and does not get to know that information about them. *See Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."); *Reports Committee for Freedom of Press*, 489 U.S. at 767 ("[O]ur cases have also recognized the privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public."). Regardless, Plaintiffs also allege their names are intercepted as well. Compl. ¶ 47.[1]

**B. Defendant's Purported Use Of The Communications Is Irrelevant**

Defendant also contends "Plaintiffs cannot establish a concrete harm premised on Talkdesk's alleged use of their calls, because Talkdesk did not use their calls," at least for its own benefit. MTD at 9. But Plaintiffs allege exactly the opposite. Compl. ¶¶ 47-51, 92. In retort, Defendant submits a declaration for the argument that it purportedly does not use the communications for its own benefit. To be clear, it is of dubious relevance whether Defendant acted for its own benefit or Patagonia's or Zumiez's because the privacy harm is still the same: Plaintiffs' personal information is ending up in the hands of an undisclosed third party, causing them to lose control of the right to choose who gets to receive the same. Indeed, in *Ribas*, the California Supreme Court discussed two violations of CIPA § 631 that concerned one party simply acting on behalf of another: the defendant

[1] Defendant's citations on this point are inapposite. In *Mikulsky v. Noom, Inc.*, 2024 WL 251171, at *5 (S.D. Cal. Jan. 22, 2024), unlike here, "Plaintiff's activity on Defendant's website was basically anonymous." And in *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022), the plaintiffs grounded Article III standing in different theories of harm—"(1) the disclosure of private facts and (2) publicity"—than those here.

herself—who was the friend of a wife and eavesdropped solely for the wife's benefit at a divorce proceeding—and "a secretary [who] secretly transcribe[s] a conversation over an extension." *Ribas*, 38 Cal. 3d at 358, 361. And, "[w]hether Plaintiffs will be successful on the merits in this suit against [Defendant] does not affect whether they have standing to pursue such a suit." *Jones*, 85 F.4th at 574 (cleaned up).

In any event, the Court cannot grant the Motion solely based on the declaration because the merits of Plaintiffs' claim and Article III standing are "so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits." *Ruffino v. United States*, 374 F. Supp. 3d 961, 967 (E.D. Cal. 2019). In other words, the Court cannot determine whether Defendant used the communications for its own purpose for standing without also resolving Plaintiffs' CIPA § 631 claim. In this instance, "discovery should be allowed, and the court should leave the resolution of the jurisdictional issues to the trier of fact." *Id.* (cleaned up); *see also Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 735 (9th Cir. 1979) ("[W]here the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits, a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues.").

Here, Defendant's declaration seemingly admits that it uses "transcriptions, content, or other data from its customer's communications with their own customers ('customer communications') to enhance or develop products or services." ECF No. 11-1 ¶ 6. The question is whether such training was done for Defendant's "own benefit" (as Plaintiffs allege) or Defendant's customers (as Defendant contends). As that question meshes the merits of Plaintiffs' claims with Article III standing, the Court cannot decide this issue now without the benefit of discovery.[2]

---

[2] The term "own benefit" is also a loaded and ambiguous one, as something that improves Defendant's services can both benefit Defendant and its customers. Defendant's authorities are also inapposite. In *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811 (Cal. Super. Ct. July 9, 2024), the plaintiff voluntarily provided her information to the defendant, rather than having it surreptitiously intercepted by a third party like Defendant here. *Id.*, at *2 ("Defendant uses the PR/TT to collect the IP address of visitors to the Website…"). And in *Raw Story Media, Inc. v. OpenAI, Inc.*, 2024 WL 4711729, at *3, *5 (S.D.N.Y. Nov. 7, 2024), the plaintiffs alleged a harm analogous to the interference with a copyrighted work, but the actual information in the articles themselves was not copyrighted. In any event, Plaintiffs' harm here is distinct.

## II. PLAINTIFFS ALLEGE A VIOLATION OF CIPA § 631

### A. Defendant Was A Third-Party Wiretapper To Plaintiffs' Communications With Patagonia And Zumiez

Defendant argues "Plaintiffs' Section 631(a) claim is precluded by CIPA's party exemption," as "Section 631 does not prohibit a party to a communication like Patagonia or Zumiez from using a tool—Talkdesk's software—to record their own communication." MTD at 1-2, 10. Whether Defendant is a third-party wiretapper is a "a question of fact for a jury, best answered after discovery into the storage mechanics of [CX Cloud]." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023) (same). Regardless, courts are generally split into two camps regarding whether a software-as-a-service ("SaaS") provider is a third-party wiretapper for the purposes of CIPA § 631. The better-reasoned approach—the "capability" approach—supports Plaintiffs' allegations that Defendant is a third-party wiretapper and is thus liable for violating CIPA § 631.[3] Defendant's proffered interpretation, meanwhile—the "extension" approach—has no basis in the text, caselaw, and legislative policy behind CIPA § 631 and should be rejected. But even under this interpretation, Plaintiffs have sufficiently alleged Defendant is a third-party wiretapper.

#### *1. Defendant Is A Third-Party Wiretapper Under The "Capability" Approach, Which The Court Should Adopt*

As a "growing number of district courts" have held (*Turner*, 2024 WL 2750017, at *10), a SaaS provider is a "third party" under CIPA § 631(a) if the SaaS provider "ha[s] the *capability* to

[3] A number of courts, including this Court in *Revitch*, have even held a SaaS provider is a third-party wiretapper by virtue of the fact that it is "a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (finding SaaS provider was a third party to communications between website and its customers); *see also*, *e.g.*, *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 981 (C.D. Cal. 2023) ("[A] plausible inference from Valenzuela's allegations is that Akamai—a corporate entity wholly distinct from Nationwide—is a third party learning the contents of communications in real time."); *Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Alameda Cnty. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

use its record of the interaction for any other purpose ([unlike] a tape recorder [that] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (italics in original); *see also*, *e.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972-73 (N.D. Cal. 2023) (adopting "capability" approach); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024) (same); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) (same); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (C.D. Cal. Nov. 27, 2023) (same); *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (same and noting "courts have posited that companies like ASI are separate corporate entities more accurately analogized to the eavesdropper in *Ribas*" because "the alleged capabilities of [web monitoring] software are beyond the ordinary function of a tape recorder") (internal quotations omitted). The "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can do so. *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Applying the "capability" approach, Plaintiffs' allegations show Defendant has the capability to use the wiretapped conversations for a number of purposes other than providing them to Patagonia and Zumiez, including but not limited to:

- Performing comprehensive call analytics, like applying "sentiment tags," "min[ing]" conversations "to help identify customer mood trends and pain points," and applying AI models to evaluate conversations. Compl. ¶¶ 26-29.

- Providing suggested actions to customer service agents based on the content of the conversations, including through "Talkdesk Agent Assist, a personalized AI assistant that listens, learns, and assists agents in every conversation." *Id.* ¶¶ 31-32.

- Analaying "keywords uttered by callers which trigger analert to contact center or other business systems, on problems that need immediate attention." *Id.* ¶ 33.

- Performing sentiment analysis by "detect[ing] patterns in" the callers' voice, which "exposes consumers to significant risks." *Id.* ¶ 39.
- Collecting PII, "content data," or "personal data that may be included in communications or as a result of Talkdesk products and services." *Id.* ¶ 47.
- Training its AI models using the communications it intercepts, as well as using other information gleaned from the wiretapped communications to improve and analyze Defendant's services. *Id.* ¶¶ 48, 51.

These allegations make clear that Defendant has the capability to "capture[], store[], and interpret[] [] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *6 (SaaS provider was a third party wiretapper where it "may use and store Amazon Connect ML Content to develop and improve Defendant's own services" and "has the capability to analyze any data it collects through its Amazon Connect platform") (cleaned up); *Turner*, 2024 WL 2750017, at *10 (same where "the court may reasonably infer that at the very least, Nuance can use consumers' voice prints to improve its own products and services"); *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024) (same where "Salesforce has the capability to use Chat communications to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services; and (iii) analyze Chat communications to assist with customer service interactions and data analytics") (cleaned up); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *3 (N.D. Cal. Feb. 13, 2024) ("Balletto does include allegations about how Salesforce would be capable of using data from Honda's website: through the Einstein data intelligence platform."); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (finding that "software that allows a third party to capture messages in real time and later perform data analysis" should qualify as a third-party wiretapper); *Wright v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2023 WL 5837492, at *6 (S.D. Cal. Sept. 8, 2023) (SaaS provider is a third party eavesdropper based on "allegations that Quantum retains the right to analyze and distribute recorded communications for independent purposes").

In particular, Plaintiffs direct the Court's attention to the decisions in the *Gladstone* and *Turner* matters. There, courts analyzed whether competitors of Defendant in this space—Amazon

and Nuance (which is owned by Microsoft)—who were providing call monitoring services to companies for customer service purposes were third party wiretappers. As noted above, *both courts* held the SaaS providers were third party wiretappers, based on allegations like those here that the SaaS provider could use the intercepted communications to improve and develop its own products and services. *Gladstone*, 2024 WL 3276490, at *6; *Turner*, 2024 WL 2750017, at *10. Defendant fails to even address these authorities. Given Amazon and a Microsoft-owned company were both deemed third-party wiretappers in similar cases, there is no good reason to hold otherwise as to Defendant here.

*2. Defendant Is A Third-Party Wiretapper Under The "Extension" Approach, Which The Court Should Reject*

Defendant argues it is not liable under the "extension" approach because "Talkdesk's software merely provided a tool that allows Patagonia and Zumiez to record and analyze its own data in aid of Patagonia's and Zumiez's businesses." MTD at 12 (cleaned up) (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)). As an initial matter, Plaintiffs allege Defendant "profits from its provision of the CX Cloud service" and is given the ability to use the intercepted communications or information derived therefrom to train its AI models, and analyze and improve its products and services. Compl. ¶¶ 48-51. These allegations satisfy the "extension" approach because Defendant "intercepted and used the data itself" "to monetize and market [its] own services" (*i.e.*, by improving its servings and making them more profitable). *Graham*, 533 F. Supp. 3d at 832; *Smith v. YETI Coolers, LLC*, --- F. Supp. 3d ---, 2024 WL 4539578, at *3 (N.D. Cal. Oct. 21, 2024) (internal quotations omitted). Regardless, a growing number of courts have rejected the "extension" approach as "based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey*, 688 F. Supp. 3d at 972; *see also*, *e.g.*, *Javier*, 649 F. Supp. 3d at 900 (rejecting "extension" approach); *Gladstone*, 2024 WL 3276490, at *6 (same); *Turner*, 2024 WL 2750017, at *10 (same); *Balletto*, 2023 WL 7026931, at *2 (same); *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d

969 (same); *Super Bright LEDs Inc.*, 2023 WL 8424472, at *7 (same). This Court should do the same.[4]

*First*, the "extension" approach defies the text of CIPA § 631. Specifically, the "extension" approach "interprets the second prong of the statute"—which penalizes "reading" communications—"based on the intentions and usage of the prospective third party." *Javier*, 649 F. Supp. 3d at 900. And "the third prong of the statute already penalizes 'use.'" *Id.* "Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.*; *see also D'Angelo v. Penny OpCo, LLC d/b/a JCPenney*, 2023 WL 7006793, at *7-8 (S.D. Cal. Oct. 24, 2023) (same) ("A use requirement is more appropriate in a Clause Three, not Clause Two … To plausibly allege a violation of Clause Two, [plaintiffs] need not allege that Vergic [conducted wiretapping] for its own use."). Further, CIPA § 631(a) penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" to conduct wiretapping. In other words, CIPA § 631 not only prohibits wiretapping by a third party like Defendant, but also prohibits a party to the communication, such as the Nonparty Entities, from allowing Defendant to wiretap *on Patagonia's and Zumiez' behalf*. The "extension" approach is thus contrary to this plain text as well.

*Second*, in *Ribas*, the California Supreme Court "did not consider the wife's friend's intentions or the use to which they put the information they obtained." *Javier*, 649 F. Supp. 3d at 900. "Instead, [*Ribas*] emphasized the privacy concerns at issue with having an unannounced second auditor listening in on the call." *Id.* (cleaned up). Indeed, *Ribas* went as far as to contemplate liability under CIPA § 631(a) for an employer who "*request[s] a secretary to secretly transcribe a conversation over an extension*," even though a secretary would be doing the recording solely for

---

[4] Plaintiffs acknowledge the Court followed the "extension" approach in *Love v. Ladder Financial, Inc.*, 2024 WL 2104497 (N.D. Cal. May 8, 2024). Plaintiffs respectfully submit the Court should reconsider that view in light of the authorities mentioned herein. In particular, the plaintiffs in that action failed to cite to *Saleh*, 562 F. Supp. 3d at 520, which found FullStory—the third party at issue in *Love* as well—was a third party wiretapper because it was "a separate legal entity that offers 'software-as-a-service" and not merely a passive device." In addition, the Court seemed to find persuasive the plaintiffs' allegation that FullStory "uses information collected from users of its customer websites for certain purposes," but the plaintiffs did not show why FullStory would learn "granular information" to fulfill those uses. *Love*, 2024 WL 2104497, at *2. Plaintiffs here alleged Defendant used the intercepted information in line with its Privacy Notice. Compl. ¶¶ 48-51.

the benefit of their employer. *Ribas*, 38 Cal. 3d at 361 (emphasis added). The "extension" approach, however, would have exempted the friend and the hypothetical secretary, as they were simply wiretapping on behalf of the wife and their employer respectively. But that is not what the California Supreme Court held.

*Third*, as the *Saleh* court recognized:

> [The "extension" approach w]ould imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party. The text of section 631(a), however, does not contain any such exception, and indeed, [Defendant] invite[s] an interpretation that would vitiate the statute's protections.

*Saleh*, 562 F. Supp. 3d at 520; *Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 ("Eavesdropping on a conversation at the time it occurs is a violation of Section 631, even if done for the benefit of a party to the conversation."). In other words, adopting the "extension" approach would undermine CIPA's purpose of preventing the dissemination communications to an unannounced second auditor, *see Ribas*, 38 Cal. 3d at 360-61, as it would allow any third party to escape liability so long as it was acting on behalf of a party. On top of this, the "extension" approach permits innumerable technology companies to possess the communications of Californians simply because they were paid by others to do so, thus costing Californians "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 361. This undercuts the purpose of CIPA. Given this, the Court must adopt the "capability" approach over the "extension" approach because "when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

**B. Defendant Intercepted Plaintiffs' Communications In Transit**

Defendant argues that Plaintiffs' allegations of an interception while in transmission, as required by CIPA, are "wholly conclusory." MTD at 2. Defendant cherry-picks two paragraphs while ignoring the rest of the Complaint that plausibly alleges an interception. Looking at the entire Complaint, Plaintiff alleges that Defendant is transcribing every conversation between a Patagonia

or Zumiez agent and their customers "in real time," which could only be done if Defendant was actually reading or learning the contents of the communications. Compl. ¶ 24. Plaintiffs further allege that Defendant analyzes callers' utterances to provide Contact Center agents with "real-time dashboards that let agents make workflow decisions on the fly to ensure that customers' needs are met." *Id*. ¶¶ 23, 31. Indeed, Plaintiffs allege that a personalized TalkDesk AI "assistant that listens, learns, and assists agents in every conversation." *Id.* ¶ 32. And Defendant also analyzes "keywords uttered by callers which "trigger an alert to contact center or other business systems, on problems that need immediate attention," which again, could only be done if Defendant was learning the contents of the conversations in real time. *Id.* ¶ 33. Further, Plaintiffs make clear that the intended recipients of their communications were Patagonia and Zumiez, not Defendant. *Id*. ¶ 42. Yet, Defendant "itself is collecting the content of [their] conversation[s] before that data is provided to any entity that was a party to the conversation (like Patagonia or Zumiez)." *Id*. ¶ 46.

These factual allegations are sufficient to allege an in-transit interception by Defendant. *Yeti Coolers*, 2023 WL 5736006, at *4 (C.D. Cal. Sept. 5, 2023) (in-transit interception alleged where plaintiff "sets forth factual allegations regarding the routing of her chat messages through ASI's servers that occurred simultaneously with her use of the Website's chat function"); *Balletto*, 2024 WL 589090, at *2 (same); *Yockey*, 2024 WL 3875785, at *5 (same where plaintiffs alleged the defendant "receives the chat messages either before or simultaneously with its clients") (cleaned up); *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *4 (C.D. Cal. July 31, 2024) ("Plaintiff has plausibly alleged that Genesys [a direct competitor of Talkdesk] intercepted her communication while the communication was in transit" because the communication was "first transmitted to Genesys's servers" and "transmitted to Genesys in real time").

**C. Defendant Intentionally Wiretapped Plaintiffs' Communications**

Defendant argues that "[t]he first and second clauses of CIPA § 631(a) require non-conclusory allegations of Talkdesk's intent or willfulness" and Plaintiffs allegations are "wholly conclusory." MTD at 14. Notwithstanding "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact" (*Gladstone,* 2024 WL 3276490, at *10 (W.D. Wash. July 2, 2024), Plaintiffs' allegations here are sufficient. Plaintiffs allege that Defendant "intentionally

designed" CX Cloud and its Services as part of its functionality to intercept, listen to, record, read, and analyze customer service conversations while in transit. *Id.* ¶¶ 3-5, 21-43, 53. Plaintiffs include screenshots of Defendant's website where Defendant admits to recording calls between customer agents and callers deliberately, including contracting with Patagonia and Zumiez here for that very purpose. Compl. ¶¶ 22-23, 26-28. Further buttressing Plaintiffs' allegations of intent, Plaintiffs contend that Defendant uses the communications it receives through CX Cloud for its own "independent purposes." Compl. ¶¶ 48-51. Thus, Plaintiffs allege the requisite intent because Defendant's service "is designed for the purpose of recording and analyzing communications between its customers … and consumers or other entities." *Gladstone*, 2024 WL 3276490, at *11; *see also Doe v. FullStory, Inc.,* 712 F. Supp. 3d 1244, 1260 (N.D. Cal. 2024) (intent alleged where "TikTok designed and provided its Pixel to sites like Favor *in order* to intercept the information that [plaintiff] alleges TikTok received") (emphasis in original).

Defendant contends its Privacy Notice absolves its intent because the Privacy Notice states "Talkdesk restricts the collection of the information to the minimum amount required to provide its services." MTD at 15 (cleaned up). Whether or not Defendant adheres to this policy is a question of fact. *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024) ("[T]he Court cannot conclude from [Business Tools Terms] that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit. Meta's argument presents a question of fact that the Court cannot resolve at this stage."). Regardless, the "minimum amount required" is a necessarily subjective term, as the "minimum amount" includes Plaintiffs' communications with Patagonia and Zumiez. Thus, even Defendant's Privacy Notice admits it intends to intercept Plaintiffs' communications, regardless of whatever other information Defendant tries not to collect. *Id.* ("Whatever agreements may have been in place, those agreements do not establish as a matter of law that Meta did not intend to receive the information plaintiffs claim was transmitted."). Defendant also contends that "its software is only used as directed by its customers." MTD at 15. But that is like saying a restaurant does not intend to serve a particular dish to its customers when it offers that dish on a menu. Defendant offers its services to customers for the

purpose of recording consumers, and that is exactly what Defendant does. *See Gladstone*, 2024 WL 3276490, at *11.

Last, Defendant cites this Court's holding in *Doe I v. Google LLC*, --- F. Supp. 3d ---, 2024 WL 3490744, at *6 (N.D. Cal. July 22, 2024), which found intent was insufficient alleged where the defendant's various policies showed it did "not want to receive private health information and has instructed providers not to send it." But nothing in Defendant's Privacy Notice is so limiting: it intends to learn Plaintiffs' communications to provide its services—even if this is the "minimum" it collects—and that is exactly what it does. Compl. ¶¶ 22-34. And, whereas "Google [] admonished health care providers not to use the source code in a way that causes users' personal health information to be transmitted to Google" (*Doe I,* 2024 WL 3490744, at *1), Defendant here proudly touts its partnership with Patagonia and Zumiez through case studies. Compl. ¶¶ 22-23. Defendant also cites nothing in its Privacy Notice putting the burden on its customers to obtain consumer consent, but even that is insufficient. *Gladstone*, 2024 WL 3276490, at *11 (rejecting argument that defendant "contractually requires companies that use Amazon Connect to provide notice and obtain consent from their customers" precludes a finding of intent).

**D. Defendant Used The Wiretapped Communications**

Defendant contends there is no violation under the third clause (usage) simply because the clause is contingent upon a violation of the first or second clauses, and Defendant asserts that Plaintiffs fail to allege a violation under either of those. MTD at 15. On the contrary, Plaintiff has alleged a violation of both clauses for the reasons set forth above (Argument § II.A-C, *supra*), and can therefore assert a claim for a violation of the third clause. And, Plaintiffs' allegations plausibly establish that Defendant uses the communications it receives through CX Cloud for its own "independent purposes," including but not limited to financial gain to improve its services, develop new ones, and train its AI models. Compl. ¶¶ 48-51, 92.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiffs respectfully request leave to amend to cure any such deficiencies. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: December 16, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiffs*