**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
Adam M. Korn (SBN 333270)
*Adam.Korn@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

Attorneys for Defendant
Talkdesk, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

REBEKKA LIEN and JAKE SEEVERS, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

TALKDESK, INC.,

*Defendant*.

CASE NO.: 3:24-cv-06467-VC

Assigned to Hon. Vince Chhabria

**DEFENDANT TALKDESK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT**

Hearing Date: January 23, 2025
Time: 10:00 a.m.

Action Filed: September 13, 2024

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS' OPPOSITION CONFIRMS THEY DO NOT HAVE STANDING .......... 1

A. Plaintiffs Do Not Refute Their Lack Of Concrete Harm ....................................... 1
B. Plaintiffs' Lack Of Standing Is Not Intertwined With The Merits ......................... 5

III. PLAINTIFFS' OPPOSITION CONFIRMS THEY HAVE NO CIPA CLAIM ................. 6

A. The Opposition Confirms Talkdesk's Software Is Not a Third Party .................... 6
B. Plaintiffs' Interception Allegations Are Conclusory ............................................. 9
C. The Opposition Confirms Plaintiffs Fail To Allege Willful Intent ......................... 9
D. Plaintiffs Have No Claim Under The Third Clause Of Section 631 ..................... 10

IV. CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Balletto v. Am. Honda Motor Co.*,
No. 23-cv-01017, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ....8

*Balletto v. Am. Honda Motor Co.*,
No. 23-CV-01017, 2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ....9, 10

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ....4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....3

*Cantinieri v. Verisk Analytics, Inc.*,
No. 2:21-CV-6911, 2024 WL 5202579 (E.D.N.Y. Dec. 23, 2024) ....5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....9

*D'Angelo v. Penny OpCo, LLC*,
No. 23-CV-0981, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ....9

*Doe I v, Google LLC*,
2024 WL 3490744 (2024) ....10, 11

*Doe I v. Google LLC*,
No. 23-CV-02431, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ....5

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ....10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....3

*Garcia v. Build.com, Inc.*,
No. 22-CV-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....4

*Gladstone v. Amazon Web Servs., Inc.*,
No. 2:23-CV-00491, 2024 WL 3276490 (W.D. Wash. July 2, 2024) ....7, 9, 10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ....4

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....6, 7

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ....4

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....1, 3, 5

*James v. Allstate Ins. Co.*,
No. 3:23-CV-01931, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)........................................7

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .........................................................................4

*Jones v. Bloomingdales.com, LLC*,
F.4th, 2024 WL 5205528 (8th Cir. Dec. 24, 2024)...........................................................3

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ..........................................................................................2

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023)........................................3

*Love v. Ladder Fin., Inc.*,
No. 23-cv-04234, 2024 WL 2104497 (N.D. Cal. May 8, 2024).................................1, 5, 6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)...........................................................................4

*McClung v. AddShopper, Inc.*,
No. 23-cv-01996, 2024 WL 189006 (N.D. Cal. Jan. 17, 2024)................................2, 4, 5

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .........................................................................10

*Mikulsky v. Noom, Inc.*,
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .....................................................................3

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023).............................................................................2

*Mount v. PulsePoint, Inc.*,
No. 13 CIV. 659, 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ........................................4

*Raw Story Media, Inc. v. OpenAI, Inc.*,
F. Supp. 3d , 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024) ..............................................5

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..............................3, 4, 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......................................................................................6

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .........................................................................................5

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ...........................................................................7

*Shah v. Fandom, Inc.*,
No. 24-CV-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ......................................4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)......................................................................................................3

*Tate v. Vitas Healthcare Corp.*,
No. 2:24-cv-1327, ECF No. 27 (E.D. Cal. Jan. 8, 2025) .......... 9

*TransUnion*,
684 F. App'x 32 (2d Cir. 2017) .......... 4

*TransUnion. Byars v. Sterling Jewelers, Inc.*,
No. 5:22-CV-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 2, 6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 1, 2, 4

*Turner v. Nuance Commc'ns, Inc.*,
No. 22-CV-05827, 2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... 9

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
No. 3:22-CV-09042, 2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 3

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 9

*Valenzuela v. Super Bright LEDs Inc.*,
23-cv-01148, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 8

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .......... 4

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) .......... 6

*Williams v. DDR Media, LLC*,
No. 22-CV-03789, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......... 5

*Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*,
No. 22-CV-1954, 2023 WL 5837492 (S.D. Cal. Sept. 8, 2023) .......... 9

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 8, 10

**State Cases**

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 3, 4, 8

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 3886811 (Cal. Super. Ct. July 09, 2024) .......... 5

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 7, 8

**State Statutes**

Cal. Civ. Code § 1798.145(a)(6) .......... 8

Cal. Pen. Code § 631 ..... 1, 6, 7
Cal. Pen. Code § 631(a) ..... 10, 11

**Rules**

Cal. Civ. Local Rule § 7-9(b) ..... 7

# I. INTRODUCTION

Plaintiffs' Opposition fails to refute Talkdesk's showing that Plaintiffs have not alleged, and cannot allege, any "downstream consequences" from Patagonia and Zumiez's use of software supplied by Talkdesk to record and improve basic, non-confidential, customer service interactions. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021). In their Opposition, they assert that a bare CIPA violation and/or the loss of the ability to control their personal information are sufficient to show an Article III injury. Case law rejects both propositions. *E.g.*, *id*. at 426 (Article III standing "requires a concrete injury even in the context of a statutory violation."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (rejecting proposition that "any situation in which one loses control of information" would "confer standing" as inconsistent with *TransUnion*).

On the merits, Plaintiffs' Opposition fails to show that Talkdesk plausibly violated CIPA § 631 by providing recording software to Patagonia and Zumiez. Plaintiffs assert that simply because the software has the capability to do more than record communications, Talkdesk was necessarily an eavesdropper, but not even Plaintiffs' authorities go that far. Plaintiffs' factual allegations make clear that Talkdesk's software operated as a tool to aid Patagonia and Zumiez's own lawful recording and improvement of their customer service interactions, which this Court has held does not create liability under CIPA. *Love v. Ladder Fin., Inc.*, No. 23-cv-04234, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (Chhabria, J.). Plaintiffs similarly fail to show that their allegations of an interception, or that Talkdesk acted intentionally or willfully, are anything more than conclusory. And because they fail to allege a plausible violation of the first two clauses of § 631, their claim under the third clause necessarily fails. Their Complaint should be dismissed.

# II. PLAINTIFFS' OPPOSITION CONFIRMS THEY DO NOT HAVE STANDING

## A. Plaintiffs Do Not Refute Their Lack Of Concrete Harm

Plaintiffs claim that they can show Article III standing by simply asserting a statutory violation with no downstream consequences. Opp. at 2. This is not the law. As the Supreme Court has made clear, Article III standing "requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury," *i.e.*, "downstream

consequences" caused by the violation of a statutory right. *Id*. at 414, 442. Thus, to assess standing in the privacy context, courts must decide "whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citations omitted); *see McClung v. AddShopper, Inc.*, No. 23-cv-01996, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.) (to assess "whether a plaintiff has adequately alleged standing, courts consider the nature and existence of the injury"). "[T]he position that any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm . . . is at odds with" *TransUnion*. *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

*Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023), cited by Plaintiffs, does not relieve Plaintiffs of their duty to allege "downstream consequences" from an alleged statutory violation to satisfy standing. *See* Opp. at 2. While *Jones* recognized that a statute that codifies a common law privacy right may give rise to a concrete injury, that did not end the court's analysis. Rather, the Ninth Circuit followed *TransUnion*'s admonition that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." 594 U.S. at 426. Thus, the Ninth Circuit found a concrete injury not because of a bare statutory claim, but because plaintiffs alleged that their "private communications," including text messages and call logs with individuals other than defendant, were made available to unknown third parties without their consent. *Jones*, 85 F. 4th at 572-74.

No similar invasion of a common law right is alleged here. The only information Talkdesk's software allegedly acquired was Plaintiffs' phone number and inquiries about store hours/events and shoe brands. Compl. ¶¶ 59-62, 69-72. Collecting "basic contact information"—including Plaintiffs' "phone number"—does not "bear a close relationship" to any traditionally recognized harm. *Mikulsky*, 682 F. Supp. 3d at 864. Likewise, recording Plaintiffs' ordinary customer-support questions "is akin to the commonplace use of a security camera at a brick-and-mortar store," and because no customer "at a brick-and-mortar store could claim a privacy interest in . . . the public

parts of that store," "[P]laintiffs lack standing . . . [since] they don't allege the interception of private information." *Jones v. Bloomingdales.com, LLC*, F.4th , 2024 WL 5205528, at *3 (8th Cir. Dec. 24, 2024); *see Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no harm from the collection of web browsing to obtain "flight pricing"). Indeed, Plaintiffs concede that Talkdesk's software collected nothing private by disclaiming that their theory of harm is based on the tort of "public disclosure of private facts." Opp. at 5 n.1.

Plaintiffs assert that the "'dissemination of their statements . . . to an unannounced second auditor'" bears a close relationship to a privacy right that "has long been protected." Opp. at 2:19-23 (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)). But the bare dissemination of Plaintiffs' nonprivate statements does not confer standing. *Valenzuela v. Keurig Green Mountain, Inc.*, No. 3:22-CV-09042, 2023 WL 6609351, at *3 (N.D. Cal. Oct. 10, 2023). Because Plaintiffs have not alleged a "reasonable expectation of privacy over the contents of [their] chats," they have failed to allege an injury "analogous to . . . intrusion upon seclusion" or any other common law wrong. *Id*.[1]

Plaintiffs compare their Complaint to cases that found standing based on highly dissimilar facts. Opp. at 2:14–5:14. In *In re Facebook, Inc. Internet Tracking Litig.*, Facebook amassed "cradle-to-grave" profiles on its users that it then sold to advertisers, a practice in breach of its express representations that it would not collect or sell that information. 956 F.3d 589, 598-600 (9th Cir. 2020); *see Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (standing found after "Google promised plaintiffs it would not collect their data while they were in private browsing mode [but] did so anyway"). In *Revitch v. New Moosejaw, LLC*, defendant "scanned [plaintiff's] computer for files" that "allowed [defendant] to associate [plaintiff's] browsing habits with his identity, a highly offensive breach of norms." No. 18-CV-06827, 2019 WL 5485330, at *1, *3 (N.D. Cal. Oct.

[1] Plaintiffs' names, which they do not allege were obtained by Talkdesk's software, are not private. Plaintiffs do not allege that their names were provided to Patagonia or Zumiez. Compl. ¶¶ 59-62, 69-72. The fact that the software could record names does not excuse Plaintiffs from alleging that this information was disclosed by them personally, if it was. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016). Thus, like in *Mikulsky*, Plaintiffs' recorded data remained "basically anonymous." 2024 WL 251171, at *5. And even if Plaintiffs' names were collected, they are not private. *I.C.*, 600 F. Supp. 3d 1034, 1048-49 ("email address [and] phone number" not private).

23, 2019). No surreptitious bypassing of technical barriers or breach of promise is alleged here.[2]

Unlike the authorities provided by Plaintiffs, where defendants were accused of clandestine collection and sale of private information in violation of their express disclosures to consumers, here, Talkdesk provided unrefuted evidence that it does not use the data it obtains from Patagonia's or Zumiez's calls "to improve or develop products or services for Talkdesk." Andrade Decl. ¶ 7. Tellingly, Plaintiffs ignore paragraph 7 of the Andrade Declaration. They cite only paragraph 6 and do so out of context. Opp. at 6:17-19. Paragraph 6 makes clear that any "use" of data is exclusively by Talkdesk's *customers*, not Talkdesk. Andrade Decl. ¶ 6. This fact is hardly "irrelevant," as Plaintiffs claim. Opp. at 5:15. *McClung* is instructive here. 2024 WL 189006. There, the Court found the "injury-causing" conduct for Article III was not the sole "misappropriation" of consumers' web browsing history and "personal information," but the "*use* [of] that . . . information" to "barrage [consumers] with unwanted email communications"—the

---

2 Plaintiffs' other authorities are similarly unavailing, if they remain viable post *TransUnion*. In *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, the court found standing where defendants surreptitiously bypassed users' privacy settings to place tracking cookies on their web browsers in violation of their promises not to do so. 934 F.3d 316, 321, 325 (3d Cir. 2019). In *Mount v. PulsePoint, Inc.*, the defendant circumvented users' cookie blocker settings to collect data and "sold [the data] to advertisers." No. 13 CIV. 659, 2016 WL 5080131, at *2, *4 (S.D.N.Y. Aug. 17, 2016). No such allegations of bypassing of technical barriers to acquire data that Plaintiffs intended to keep private are present here. The Second Circuit in *Mount* found standing based on the bare allegation that plaintiffs' statutory rights were violated, a holding that is not good law post-*TransUnion*. 684 F. App'x 32, 34 (2d Cir. 2017); *see TransUnion*, 594 U.S. at 414, 442.

In *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989), convicts' "rap sheets" were protected from disclosure based on the uniquely sensitive nature of "rap-sheet" information, which is not true of Plaintiffs' call data that they concede is not private. Opp. at 5 n.1. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) has been criticized because it relied on Ninth Circuit precedent "before it had the benefit of the Supreme Court's guidance in *TransUnion.*" *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 358 (E.D. Pa. 2023). *Mastel v. Miniclip SA* involved allegations that an app accessed plaintiff's "name, email, phone number, and address, addresses of friends and relatives, and personal and private messages . . . ." 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021). *Garcia v. Build.com, Inc.*, No. 22-CV-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) relied on *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) for the conclusion that eavesdropping had a "close historical or common-law analog," but the plaintiff in *Wakefield* identified a concrete injury—unsolicited calls that disturb recipients' solitude; no such disturbance is alleged here. Finally, *Shah v. Fandom, Inc.*, No. 24-CV-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024), *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493, 2024 WL 3573874 (C.D. Cal. July 19, 2024), and *Ribas*, 38 Cal. 3d 355 did not address Article III standing at all.

"ultimate injury" "that can be vindicated in the federal courts." *Id*. at *1, *2.[3] Conversely, all that occurred here is Talkdesk's software "stor[age] [of information] for [Patagonia's and Zumiez's] use," which "is not the kind of privacy intrusion" that is a concrete harm. *Love*, 2024 WL 2104497, at *2. "Given the absence of evidence that [Talkdesk] is using the [ ] information for its own purposes, [P]laintiffs have not shown that they . . . suffer in any significant way[.]" *Doe I v. Google LLC*, No. 23-CV-02431, 2023 WL 6882766, at *3 (N.D. Cal. Oct. 18, 2023) (Chhabria, J.).

Because Plaintiffs do not allege that Talkdesk's software acquired their private information, and they cannot allege that it was used for a nefarious purpose, their Complaint should be dismissed. "Otherwise, every . . . situation in which one loses control of information[ ] would confer standing," an outcome *TransUnion* prohibits. *I.C.*, 600 F. Supp. 3d at 1049.

**B. Plaintiffs' Lack Of Standing Is Not Intertwined With The Merits**

Plaintiffs' conclusory assertion that Talkdesk's standing attack is "intertwined" with the merits and therefore requires discovery should be rejected. Plaintiffs contend that a factual discrepancy exists between Talkdesk's evidence that it never used their communications, and Plaintiffs' allegation that Talkdesk uses recorded conversations for its own benefit. Opp. at 6:17-

---

[3] Consistent with *TransUnion* and *McClung*, courts have held that the inquiry for assessing a privacy injury does not end with the collection of data by a third party, but with how that third party uses the data. *Cantinieri v. Verisk Analytics, Inc.*, No. 2:21-CV-6911, 2024 WL 5202579, at *11 (E.D.N.Y. Dec. 23, 2024) ("the mere disclosure of [plaintiff's] PII to an unauthorized actor d[oes] not, standing alone, establish [an] injury in fact"). "This principle is also supported [by *Salazar*]," cited by Plaintiffs, which found the plaintiff had a concrete harm after "the [NBA] disclosed to Meta the plaintiff's PII, which Meta allegedly 'harnesses . . . to show the user targeted ads—ads that Meta chooses for its own commercial purposes . . . .'" *Id*. (quoting *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542-44 (2d Cir. 2024)); *see Williams v. DDR Media, LLC*, No. 22-CV-03789, 2023 WL 5352896, at *7 (N.D. Cal. Aug. 18, 2023) ("[P]laintiff alleges no use by the third party other than storing that information for DDR Media to refer back to. Defendants' use of the information here was benign.") (dismissing privacy claim). In *Salazar*, the Second Circuit acknowledged that the "core" harm was not that that plaintiff's "data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta" so that Meta could show plaintiff "targeted" ads. 118 F.4th at 543 (emphases in original).

Plaintiffs fail to distinguish Talkdesk's authorities showing they lack standing. *Raw Story Media, Inc. v. OpenAI, Inc.* acknowledged *TransUnion*'s requirement that plaintiffs must show "actual adverse effects stemming" from a statutory violation, which is absent here. __F. Supp. 3d __, 2024 WL 4711729, at *4 (S.D.N.Y. Nov. 7, 2024). In *Rodriguez v. Fountain9, Inc.*, defendant aided a third party in surreptitiously capturing plaintiff's data, but defendant caused no harm because it did not use plaintiff's data for a wrongful purpose, just like Talkdesk here. No. 24STCV04504, 2024 WL 3886811, at *4 (Cal. Super. Ct. July 09, 2024).

22. But Plaintiffs' burden to show standing required them to present evidence, not mere allegations, to rebut the Andrade Declaration. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). This they failed to do. Talkdesk's Motion should be granted.

## III. PLAINTIFFS' OPPOSITION CONFIRMS THEY HAVE NO CIPA CLAIM

### A. The Opposition Confirms Talkdesk's Software Is Not a Third Party[4]

Plaintiffs argue that because Talkdesk's software has the capability to do more than a simple tape recorder, Talkdesk is necessarily an unauthorized third-party to Plaintiffs' communications with Patagonia and Zumiez. Opp. at 7-10 & n.3. This Court has already rejected such a broad application of CIPA. *See Love*, 2024 WL 2104497 at *2 (dismissing CIPA claim where "plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site").[5] As in *Love*, as well as *Graham* and *Williams*, upon which *Love* relied, the allegations here make clear that Talkdesk's software merely provided "a tool . . . that allows [Patagonia and Zumiez] to record and analyze its own data in aid of [Patagonia's and Zumiez's] business[es]," which is not a wiretap under California law. *Graham v. Noom, Inc.,* 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). Plaintiffs allege that Talkdesk's software allows "[Patagonia and Zumiez] to record [their] own communications with [Plaintiffs]," Compl. ¶¶ 2, 21-23, 33, 36-38, 40, 41, and was used by Patagonia and Zumiez to help them "'stay on top of customer issues,' and "assist[] agents with transcriptions and responses." *Id.* ¶¶ 33, 36; *see James v. Allstate Ins. Co.,* No. 3:23-CV-01931, 2023 WL 8879246,

[4] Contrary to Plaintiffs' assertion, whether Talkdesk is a third-party eavesdropper is properly decided at the pleadings stage. Opp. at 7:5-7. Courts regularly dismiss CIPA § 631 claims at the pleadings where, as here, Plaintiffs do "not allege a single fact that suggests the third-party 'intercepted and used the data itself.'" *Byars*, 656 F. Supp. 3d at 1068. Plaintiffs' vague suggestion that facts may be uncovered through discovery is insufficient. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("discovery cannot cure a facially insufficient pleading").

[5] *Revitch*, 2019 WL 5485330, at *3 is not inconsistent with *Love*. Plaintiffs cherry-pick language from *Revitch* where this Court declined to find that the undisclosed duplication of GET requests to an unknown advertiser (Meta) necessarily qualifies for the party exception simply because the software "would cause the user's browser to send a communication to Facebook, on top of and parallel to the intended communication." *Id.* at *2. That analysis has nothing to do with Plaintiffs' allegations that Talkdesk's software was only used to assist Patagonia and Zumiez's own recording. Indeed, even *Graham* relied on *Revitch* in holding the software at issue was "not a third-party eavesdropper." *Graham*, 533 F. Supp. 3d at 833.

at *3 (N.D. Cal. Dec. 22, 2023) (no CIPA claim for "software company that merely recorded the communication for retrieval by a party to the same communication"). These facts show that Talkdesk was not a third-party eavesdropper. While Plaintiffs argue that Talkdesk's software recorded conversations for purposes "other than providing them to Patagonia and Zumiez," Opp. at 8:17-9:7, they fail to allege non-conclusory facts that would support that inference.

Instead, Plaintiffs argue that this Court should reconsider *Love* because "plaintiffs in that case failed to cite *Saleh*," which Plaintiffs contend held that a software provider was a third-party because it was a "separate legal entity that offers 'software-as-a-service' and not merely a passive device.'" Opp. at 11 n.4, 7 n.3 (quoting *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021)). But *Saleh* predated *Love* and thus provides no basis for the Court to reconsider its holding. *See* Civil L.R. 7-9(b). Further, Plaintiffs' own authorities criticize *Saleh* for its "rigid" approach to determining whether a software provider is a third party, "as the precise nature of a software provider is dependent on the facts of each case." *Gladstone v. Amazon Web Servs., Inc.*, No. 2:23-CV-00491, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024).

Plaintiffs also argue that *Love*'s analysis is wrong because it is at odds with *Ribas*. Opp. at 11-12. But *Ribas* did not address the party exception upon which *Love*, *Graham*, *Williams*, and their progeny are based. The party exception arises from *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), where the court held that a party to a conversation may use a tape recorder to record it without violating CIPA § 631, even where the party did so without consent and subsequently shared the recording with others. *Id.* at 898-99. Thus, it cannot be, as Plaintiffs assert, that CIPA's party exception is inapplicable wherever participants lose their ability to control the "dissemination of their statements," Opp. at 12:17-18; to reach such a holding would require finding that *Rogers* was wrongly decided, but even *Ribas* recognized *Rogers* is good law. *See Ribas*, 38 Cal. 3d at 359.

Nonetheless, even under the authority that Plaintiffs claim is at odds with *Love*, *Graham*, and *Williams*, Plaintiffs' allegations do not show that Talkdesk's software was an eavesdropper. For example, in *Valenzuela v. Super Bright LEDs Inc.*, 23-cv-01148, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023), the court rejected plaintiff's CIPA claim based on defendant's use of

software to eavesdrop upon online chats because the plaintiff failed to allege that "the software could be used for data analytics or marketing/advertising by persons other than" defendant. *Yockey v. Salesforce, Inc.* similarly rejected a CIPA claim where plaintiffs provided no facts that "support a reasonable inference that [the provider] has the capability to use these communications for any purpose other than furnishing them to [defendant] . . . akin [to] the tape recorder." 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023). And *Balletto v. Am. Honda Motor Co.,* No. 23-cv-01017, 2023 WL 7026931, at *3 (N.D. Cal. Oct. 24, 2023) rejected a CIPA claim where plaintiffs failed to allege that the software "has the capability of using the communications for any purpose." As in *Valenzuela*, *Yockey*, and *Balletto*, Plaintiffs allege no facts that support a plausible inference that Talkdesk's software used their recorded communications for any purpose other than providing those communications and associated analytics back to Patagonia and Zumiez, which is insufficient to allege that Talkdesk was a third party. Compl. ¶¶ 2, 21-23, 33, 36-38, 40, 41. At best, Plaintiffs allege that Talkdesk may use anonymous, de-identified, aggregated data to improve its services. *Id*. ¶ 48. But even *Ribas* recognized that CIPA is only intended to protect the "privacy of [a] communication," 38 Cal. 3d at 361, and the California Legislature has clearly spoken that anonymized and aggregated data is not private information that Plaintiffs have a right to control. *E.g.*, Cal. Civ. Code § 1798.145(a)(6). Thus, it is not surprising that Plaintiffs provide no case law—because none appears to exist—that holds that the subsequent use of de-identified, aggregated data to improve services changes a software provider into an eavesdropper.

By contrast, the cases that Plaintiffs rely on where courts found software providers were unauthorized eavesdroppers involved non-conclusory allegations that the providers used plaintiffs' communications for their own benefit—allegations that are absent here, because they are implausible. *E.g.* ECF No. 26 (citing *Tate v. Vitas Healthcare Corp.*, No. 2:24-cv-1327, ECF No. 27 at 9 (E.D. Cal. Jan. 8, 2025) (provider "use[d] the data obtained from calls placed to [defendant] to improve its own product and services")).[6] Unlike these cases, Plaintiffs' quotes in the

[6] *See also Turner v. Nuance Commc'ns, Inc.*, No. 22-CV-05827, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024) (provider "'amassed a massive database' of individuals' voice prints"

Opposition show only that Talkdesk's software can perform more services than a tape recorder, but not that it uses Plaintiffs' data for purposes independent of Patagonia and Zumiez. *See* Compl. ¶¶ 26-29, 31-32, 33, 39, 47-50. Thus, even under their own authorities, they fail to allege a claim.

**B. Plaintiffs' Interception Allegations Are Conclusory**

To show an interception, Plaintiffs cite references to Talkdesk's software operating in "real time," and claim, with no facts in support, that features of Talkdesk's software could only work if the software acquires communications "in real time." Opp. at 13:1-12. But providing more "conclusory allegations restating the pleading requirement of real-time interception . . . fail[s] to explain how the software works or how the interception occurs." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024). Plaintiffs address none of Talkdesk's authorities showing that their allegations are insufficient. *See* Mot. at 12. Plaintiffs' authorities, on the other hand, cannot save their claim because they included specific allegations regarding the technical operation of the software at issue that are absent here. *See, e.g.*, *Yockey*, 688 F. Supp. 3d at 968 (software's "Sneak Peek" feature "enables an agent to view the contents of a customer's message while the customer types the message"); *Balletto,* 2024 WL 589090, at *1 (alleging same "Sneak Peek" feature).

**C. The Opposition Confirms Plaintiffs Fail To Allege Willful Intent**

Talkdesk showed in its Motion that Plaintiffs' Section 631(a) claim fails because the first and second clauses require non-conclusory allegations of Talkdesk's intent, which Plaintiffs fail to allege, and their conclusory allegations are contradicted by Talkdesk's Privacy Notice. Mot. at 14-15. Plaintiffs ask the Court to defer the question for discovery, but whether intent under CIPA is plausibly alleged is properly decided at the pleadings. *See, e.g.*, *Doe I*, 2024 WL 3490744, at *6.

---

to use with other clients); *Gladstone*, 2024 WL 3276490, at *6 (provider "use[d] information about how [customers] use and interact with the Services to improve those services," and its "own services"); *D'Angelo v. Penny OpCo, LLC*, No. 23-CV-0981, 2023 WL 7006793, at *5 (S.D. Cal. Oct. 24, 2023) (provider "exploit[ed]' their data 'for financial gain'"); *Balletto v. Am. Honda Motor Co.,* No. 23-CV-01017, 2024 WL 589090, at *1 (N.D. Cal. Feb. 13, 2024) (provider used chat data to "improve [its] own products and services" and "develop new . . . products and services"); *Wright v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 22-CV-1954, 2023 WL 5837492, at *5 (S.D. Cal. Sept. 8, 2023) ("Quantum [] 'use[d] [plaintiff's] communications for its own commercial benefit'"); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 973-74 (C.D. Cal. 2023) (provider "specializes in harvesting data from [] conversations for financial gain").

Plaintiffs also contend that their conclusory allegations of intent are sufficient, but the case law they cite in support is inapposite. Opp. at 14. In *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), plaintiffs alleged that Meta knowingly violated its policies that prohibited its collection of confidential and sensitive tax data. *Id.* at 1002. *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) included allegations that defendant's technology was specifically designed to collect plaintiffs' payment information, health information, and other "highly sensitive information" that was the subject of their claims. No allegations of an intent to collect prohibited sensitive or confidential information in violation of Talkdesk's polices are here. *Gladstone* focused its intent analysis on case law that addresses the recording of a confidential conversation was intentional, which is not at issue here. 2024 WL 3276490, at *10-11.

Plaintiffs finally argue that Talkdesk's statement in its Privacy Notice that it will not use or process personal information for a purpose other than its customers direct is not dispositive of Talkdesk's lack of unlawful intent simply because the software can be used to "learn Plaintiffs' communications." Opp. at 15. But Talkdesk's Privacy Notice makes plain that it only collects data from individuals "to provide the service agreed and according to customer instructions," and it does not "use or process personal data for other purposes and does not sell and does not allow its sub-processors to sell personal information." RJN, Ex. 1 at 12. As this Court held in *Doe I*, there is nothing "inherently unlawful" about providing a technology that can record communications. 2024 WL 3490744, at *4. This is particularly true where, as here, the provider disclaims any use of recorded communications for a purpose other than its customers', as CIPA permits Talkdesk's customers to record their own communications with Plaintiffs.

**D. Plaintiffs Have No Claim Under The Third Clause Of Section 631**

Plaintiffs do not state a claim under the third clause of § 631(a) because they fail to state a claim under the statute's first or second clause. Mot. at 21. Further, their allegations of Talkdesk's alleged use of a communication fail to allege any conduct that CIPA prohibits. *Supra* at 8.

## IV. <u>CONCLUSION</u>

Talkdesk respectfully requests that the Court dismiss the Complaint and deny leave to amend.

DATED: January 13, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Rebekah S. Guyon*
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310-586-7700

*Attorneys for Defendant Talkdesk, Inc.*